IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIG C., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 21 C 1381 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] ) | |
| ) | |
|     Defendant. ) | |

## ORDER

Plaintiff Craig C. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disabled Adult Child ("DAC") benefits under Title II the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing memorandum in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court affirms the Commissioner's decision.

## BACKGROUND

Plaintiff applied for DAC benefits on March 11, 2019, alleging that he became disabled 10 years earlier on February 1, 2009 at the age of 21 due to a delusional disorder, anxiety, depression, insomnia, and dyslexia. (R. 228, 252). In order to be approved for benefits, Plaintiff must establish that his disability began before he turned

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

22 on July 16, 2009. (R. 228); 20 C.F.R. § 404.350(a)(5). For grades 8 through 12, Plaintiff (who has dyslexia) attended a boarding school for students with language-based learning disorders. (R. 1204). He then went to college, which included a semester abroad in Malta from May 27, 2009 to August 8, 2009. (R. 79). Plaintiff struggled when he returned to campus the next fall and on October 21, 2009, he was admitted for in-patient treatment for psychosis that appeared to be tied to abuse of Adderall. (R. 341). Plaintiff's condition worsened in August 2010 (R. 685, 748), and there is no question that he now suffers from significant mental limitations, including paranoid delusions. (*See* R. 1257, 8/25/2020 Letter from psychiatrist Stephen Chernaik, M.D., stating that he had been treating Plaintiff for paranoid delusions since 2013). The question at issue in this case is whether Plaintiff's mental impairments were disabling as of July 15, 2009, the day before his 22nd birthday.

The Social Security Administration denied Plaintiff's application initially on May 15, 2019, and again upon reconsideration on August 20, 2019. (R. 90-107). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Jessica Inouye (the "ALJ") on September 11, 2020.[2] (R. 49). The ALJ heard testimony from Plaintiff, who was represented by counsel, from medical expert Michael Cremerius, Ph.D., from Plaintiff's father, and from vocational expert Tobey Andre (the "VE"). (R. 51-89). On September 30, 2020, the ALJ issued a decision finding that Plaintiff was not disabled before his 22nd birthday. (R. 33-44). Shortly thereafter, on November 6, 2020, the ALJ amended the decision to address a September 23, 2020 letter from Dr. David Cassar, a psychiatrist from the University of Malta. (R. 13-14, 1269). The ALJ determined that the

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

letter did not alter her finding that before Plaintiff turned 22, his only impairment was a learning disorder that did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13-14, 16-18).

After reviewing the evidence, the ALJ concluded that prior to age 22, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with several non-exertional limitations. (R. 18-23). The ALJ accepted the VE's testimony that a person with Plaintiff's background and the stated RFC could perform a significant number of jobs available in the national economy, including hospital cleaner, kitchen helper, and scrap sorter. (R. 24). As a result, the ALJ concluded that Plaintiff was not disabled at any time prior to age 22 and so was not entitled to DAC benefits. (R. 24-25). The Appeals Council denied Plaintiff's request for review on January 13, 2021. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for remand, Plaintiff argues that the ALJ: (1) failed to adequately accommodate his moderate limitations in concentration, persistence, or pace; and (2) erred in rejecting the opinion from Dr. Cassar. For reasons discussed in this opinion, the Court finds that the ALJ did not commit reversible error and her decision is supported by substantial evidence.

## **DISCUSSION**

### A.   **Standard of Review**

As noted, to qualify for DAC benefits, a claimant who is over the age of 18 must have a disability which began before he reached the age of 22. 20 C.F.R. § 404.350(a)(5).

3

A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). "The usual [five-step] sequential analysis applies." *Alexandra A. S. v. Comm'r of Soc. Sec.*, No. 3:19-CV-01074-GCS, 2020 WL 5705954, at *1 (S.D. Ill. Sept. 24, 2020). In determining whether a claimant suffers from a disability, an ALJ must analyze: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

As always, in reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Analysis**

    **1.     Concentration, Persistence, Or Pace**

Plaintiff argues that the case must be remanded because the RFC did not properly accommodate his moderate limitations in concentration, persistence, or pace ("CPP"). A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022). "Both the RFC assessment and the hypothetical question posed to the [VE] must include all of a claimant's limitations supported by the medical record," including "temperamental deficiencies and limitations in" CPP. *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *2 (N.D. Ill. July 22, 2022); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Lanigan v. Berryhill*, 865 F.3d 558, 563, 565 (7th Cir. 2017).

At step two, the ALJ concluded that prior to age 22, Plaintiff had a moderate limitation in CPP, explaining that he testified to having difficulty concentrating, particularly when he was in Malta from May 27 to August 8, 2009, and was using Adderall as a result.

5

(R. 17). The ALJ determined that despite this moderate limitation, Plaintiff was able to understand and remember simple and detailed work instructions; carry out simple and routine work tasks; and occasionally work with the general public, co-workers, and supervisors. (R. 18). Though Plaintiff could not be responsible for serving the public as part of his work, he could be in proximity to the public. Finally, Plaintiff was not able to complete fast paced tasks or meet strict production quotas, but could handle end of day production quotas. (*Id.*).

Plaintiff objects that restrictions to simple and routine tasks without strict or fast-paced production quotas do not accommodate moderate limitations in CPP. (Doc. 15, at 12-13) (citing *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019)). Though this is generally true, the Seventh Circuit has recognized that "in some situations where a consulting physician translates a finding of moderate limitations in concentration, persistence, or pace into an RFC for simple, routine work, the ALJ may rely on that opinion in assigning the RFC." *Youmans v. Colvin*, No. 14 C 7609, 2016 WL 3595729, at *6 (N.D. Ill. July 5, 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)). Here, ME Cremerius translated Plaintiff's moderate limitations in CPP into an RFC for:

> understanding, remembering, simple and detailed instruction, that preclude complex, that limit him to doing more simple, routine tasks, occasional contact with co-workers and supervisors, . . . no responsibility to serv[e] the public. No fast paced tasks, or strict production quotas. End of the day production quotas would be fine.

(R. 64-65). The ALJ found Dr. Cremerius's opinion persuasive and incorporated these specific limitations into the RFC. (R. 18, 23). The Court finds no error in this decision. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (ALJ reasonably relied on consultants' narrative RFC assessments); *Melissa M. v. Saul*, No. 19 C 745, 2020 WL

207715, at *5 (N.D. Ill. Jan. 14, 2020) (ALJ properly relied on opinion of medical expert who translated moderate limitations in CPP into a specific RFC). *Compare DeCamp*, 916 F.3d at 675-76 (ALJ erred in deciding on her own without medical input that a limitation to "unskilled work" with "no fast-paced production line or tandem tasks" accounted for the plaintiff's moderate limitations in CPP).

Plaintiff does not challenge the weight given to Dr. Cremerius's opinion or point to any other physician of record who found he had a more restrictive RFC during the relevant time period (prior to July 16, 2009). Plaintiff's rationale for opposing the RFC is that it fails to recognize that he would be off-task on occasion and would need additional time to complete his work. (Doc. 15, at 13; Doc. 20, at 1-2). In support Plaintiff cites to a December 2004 Psychoeducational Evaluation indicating that his working memory capabilities were weak, and recommending that he receive unlimited testing time or, where timing was required, be allowed "extended time of <u>twice</u> that of the stated examination times." (R. 1215, 1217) (emphasis in original). To begin, that same evaluation also noted that Plaintiff was not distractible or impulsive during testing, carefully considered his answers, was focused and well-prepared for class, and was a "diligent and responsible worker in class" who "puts forth the needed effort to achieve despite the difficulties of his dyslexia." (R. 17, 1208, 1210). In addition, Dr. Cremerius had access to the December 2004 evaluation and did not find that it warranted an accommodation for time off-task.

As the ALJ correctly observed, moreover, the evidence reflects that despite his learning disorder, Plaintiff was able to matriculate at college, work as a volunteer firefighter, and serve as co-captain of the varsity squash team. (R. 22, 68-69, 82). The

7

ALJ did not err in determining that these activities were consistent with an ability to handle end of day goals with no fast paced tasks or strict production quotas, as set forth by Dr. Cremerius. (R. 22). Plaintiff does not dispute that his ability to work as a firefighter and co-captain the varsity squash team allowed for the stated RFC, but argues that he never completed another college semester after May 2009. (Doc. 15, at 13). That may be, but it is undisputed that Plaintiff returned to college in August 2009 and was enrolled there at least until his hospitalization in October 2009.

Viewing the record as a whole, the ALJ did not err in adopting Dr. Cremerius's uncontradicted RFC assessment and adequately accounted for all of Plaintiff's moderate limitations in CPP prior to July 16, 2009. Plaintiff's request to remand the case for further consideration of this issue is denied.

### 2. Opinion Evidence

Plaintiff argues that remand is still warranted because the ALJ erred in finding that the opinion from Malta psychiatrist Dr. Cassar was unreliable. Since Plaintiff filed his claim in March 2019, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security

8

disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how she considered the first two factors (supportability and consistency) and may but is not required to explain her consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

As noted, Plaintiff must establish that he was disabled on or before July 15, 2009. At the September 11, 2020 hearing, Dr. Cremerius testified that the "absolute earliest" date that Plaintiff was suffering delusions or psychosis was October 21, 2009, the day of his first hospitalization. (R. 60, 62). To counter this testimony, Plaintiff submitted a letter from Dr. Cassar dated September 23, 2020. (R. 329). That letter indicated that Dr. Cassar had treated Plaintiff professionally between June and August 2009 while he was in Malta, and that "[o]n history taking and mental state examination he was experiencing persecutory beliefs with delusions of reference and delusions of control." (R. 1269). Dr. Cassar further stated that "[o]n exploration it was clear that symptoms had been developing for at least a number of months," and Plaintiff "was treated with antipsychotic medication." (*Id.*). Plaintiff argues that the ALJ should have given this letter more consideration because it serves as corroboration that his disabling symptoms began prior to July 16, 2009. (Doc. 15, at 13-14). This Court disagrees.

9

The ALJ provided several valid and compelling reasons for discounting Dr. Cassar's letter. At the hearing, Plaintiff did not testify about receiving any treatment while in Malta. (R. 13). His father stated that Plaintiff had "a couple sessions" with an "old family friend" who is a psychiatrist, but this "wasn't formal" and there were no medical records available. (R. 13, 79-80). Then two weeks after the hearing, on September 23, 2020, Plaintiff submitted the letter from Dr. Cassar stating that he had treated Plaintiff *professionally* for delusions in the summer of 2009, and recalled that Plaintiff was taking antipsychotic medication. (R. 14, 1269). The ALJ reasonably viewed this letter with skepticism given "the unorthodox nature of its submission to the file following the hearing, after being advised no records were made at the time due [to] the informal nature of the conversations." (R. 14). The ALJ also fairly observed that the letter was vague and lacking in substance in that it "fails to say how many times [Dr. Cassar and Plaintiff] met, the dates of the meetings, the topics of conversation, the response to these talks, [Plaintiff's] mental status on each occasion, or indication of [Plaintiff's] diagnosis or prognosis." (*Id.*). Nor did the letter discuss symptom frequency or duration, or indicate what impact those symptoms had on Plaintiff's day-to-day living or his internship. (*Id.*). Moreover, the ALJ reasonably questioned the reliability of a document made some 11 years after the alleged treatment occurred given the complete absence of any contemporaneous therapy notes. (*Id.*).

Adding to the ALJ's misgivings about Dr. Cassar's letter was the fact that it contradicted other evidence in the record. For example, Dr. Cassar asserted that there was "no indication of substance abuse," but the first time Plaintiff was hospitalized in October 2009 he reported abusing Adderall while in Malta and said his symptoms

10

resolved when he ran out of medication. (R. 14, 337). Notably, Plaintiff was once again abusing Adderall at the time of the October 2009 hospitalization and was diagnosed with stimulant-induced psychosis. (R. 14, 337, 339, 1263). As before, when Plaintiff stopped taking Adderall, his symptoms resolved. (R. 14, 338, 1263). Though subsequent records make clear that Plaintiff's paranoid delusions have not been substance-related since at least 2010 (R. 1257), that is not evidence that he suffered from disabling psychosis on or before July 15, 2009. Another inconsistency the ALJ identified concerned Dr. Cassar's assertion that Plaintiff was treated with antipsychotics. Dr. Cassar provided no detail as to the type or dosage of such medication, and records show that the only medication Plaintiff was taking upon admission to the hospital on October 21, 2009 was Adderall. (R. 14, 338). He was not prescribed any additional medications upon his discharge on October 24, 2009. (R. 14, 338).

Plaintiff does not address any of these concerns but argues that the ALJ should have sent Dr. Cassar's letter to Dr. Cremerius and asked him whether the report changed his opinion. (Doc. 15, at 13; Doc. 20, at 2). A court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Any omission from the record "must be 'significant' – meaning, prejudicial – for the Court to determine that an ALJ abdicated his duty to develop the record." *Sylvester W. v. Kijakazi*, No. 19 C 4263, 2022 WL 1591622, at *3 (N.D. Ill. May 19, 2022) (quoting *Nelms*, 553 F.3d at 1098). As explained, the ALJ reasonably concluded that Dr. Cassar's letter was unreliable given its suspicious timing, vagueness, and lack of supporting treatment notes.

11

Having determined that the letter was not a trustworthy piece of evidence, the ALJ did not err in declining to forward it to Dr. Cremerius for comment.

For similar reasons, there is no merit to Plaintiff's suggestion that he can establish disability as of July 15, 2009 through a combination of his own testimony, the testimony from his father, and the letter from Dr. Cassar. (Doc. 15, at 13-14; Doc. 20, at 3). Plaintiff testified that his delusions began before Malta. (R. 76). The ALJ acknowledged that Plaintiff suffered an acute stress reaction on February 3, 2009 related to the death of a friend and relationship issues with a long-term girlfriend studying overseas. (R. 19, 20, 1259-60). But Plaintiff "effectively remitted from" his symptoms after three therapy sessions, returned to "optimal functioning" within five sessions, and did not require further services after March 4, 2009. (R. 20, 1261). Plaintiff also testified that while he was in Malta, he thought he was in a reality TV show. (R. 76). His father stated that when he spoke to his son during the Malta internship, Plaintiff told him that he thought people were talking about him and he was being watched at work. (R. 79-80). The ALJ discussed this testimony but cited evidence that Plaintiff was abusing Adderall at the time, that his symptoms resolved when he ran out, and that his father did not notice any problems during the two weeks between Plaintiff's return from Malta and his departure back to college. (R. 19, 21, 80-81, 337). None of this testimony, alone or in combination with Dr. Cassar's unreliable and unsupported letter, demonstrates that Plaintiff suffered from disabling delusions prior to his 22nd birthday.

Viewing the record as a whole, the ALJ did not commit reversible error in finding that Dr. Cassar's letter was not reliable or persuasive evidence that Plaintiff suffered from disabling psychosis and delusions before he turned 22 on July 16, 2009. There is no

doubt that Plaintiff's condition subsequently deteriorated, but "the Seventh Circuit has recognized that worsening of a claimant's condition after the date last insured does not provide a basis for granting benefits during the relevant time period." *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 WL 2085104, at *8 (N.D. Ill. May 13, 2019). Plaintiff's request to remand the case for further consideration of Dr. Cassar's letter is denied.

## CONCLUSION

For reasons stated above, Plaintiff's request to remand the ALJ's decision is denied, and the Commissioner's Motion for Summary Judgment [18] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: June 1, 2023

*Sheila Finnegan*
SHEILA FINNEGAN
United States Magistrate Judge